NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-CV-004-KSF

WALTER POWELL                                                                PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA, et al.                              DEFENDANTS

*** *** *** ***

This matter is before the Court upon the Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. [Record No. 15] For the reasons set forth below, the Motion will be granted.

## BACKGROUND

Walter Powell was in the custody of the Federal Bureau of Prisons ("BOP") and incarcerated in the Federal Medical Center ("FMC"), in Lexington, Kentucky, when he filed a *pro se* Complaint. He complained of his medical treatment there and claimed jurisdiction pursuant to 28 U.S.C. §1331, the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and also the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2672, *et seq.*

Naming the United States of America, FMC-Lexington Warden Stephen M. Dewalt, the FMC, and the FMC's Clinical Director, Dr. Michael W. Growse, as the Defendants, the Plaintiff sought a jury trial, damages from these Defendants, and injunctive relief in the form of prosthetics.[1]

---

[1] "I also feel the government should buy me new legs."

After Plaintiff moved for and was granted permission to proceed in this case *in forma pauperis*, the Court screened his Complaint.

In a Memorandum Opinion and Order issued March 3, 2009, the Court summarized Powell's factual allegations and legal claims. The Plaintiff described himself as having spina bifida and as being a "bilateral, below knee amputee." He first came to FMC-Lexington briefly for an evaluation in 2004, and has been incarcerated there pursuant to a federal sentence since 2005. He claims that he had both artificial limbs and a wheelchair prior to his imprisonment. However, he alleges, the BOP forced him to choose between the two as his means of ambulating, and so he chose the wheelchair and sent his artificial legs home.

Plaintiff claims that on two separate occasions, he requested and the Defendant doctor denied him a new set of artificial legs. In late 2007, Powell took the matter through the BOP's Administrative Remedy Process, No. 469778, and he continued to appeal denials to the exhaustion of that process. Plaintiff also supplies copies of the claim form which he filed in the FTCA's administrative process. He wrote that his legs "don't fit me cause it's been 3 years since I had them on. This place is denying me proper exercise and to be able to walk cause they sent them home in the first place." The attached denial of the claim, dated June 25, 2008, includes several reasons for the BOP's decision to deny the claim. Powell alleges that when he signed his Complaint under penalty of perjury, on December 23, 2008, he had finally been promised -- but had not yet received -- new legs.

As to pertinent law, in the March 3, 2009, screening Order, this Court noted that Powell's legal claims are three-fold. He has specifically alleged that the Defendants have (1) been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment; (2) discriminated

against him in violation of federal law in the Americans with Disabilities Act and/or the

Rehabilitation Act of 1973; and (3) neglected to provide him adequate care, a tort under the Federal

Tort Claims Act.

At the end of the March 3rd Order, the Court dismissed the claims against FMC-Lexington

and Dr. Growse in his official capacity on immunity grounds and dismissed all claims against the

warden as there were no allegations that he was personally involved.  The Court directed that

summons issue only on the United States of America, to respond to the negligence claim, and on Dr.

Growse, in his individual capacity.

### DEFENDANTS' MOTIONS

The Defendants have responded with the instant Motion to Dismiss or, in the Alternative,

Motion for Summary Judgment.  In his attached declaration, Defendant Growse admits that he made

the decisions to deny Plaintiff the new legs.  He also insists, however, that each decision was a

medical determination based on a number of factors in Powell's medical history and current

condition which made him a poor candidate.  His history included a lack of prior success in

ambulating with artificial limbs, sores/ulcers on the flesh where prior appliances attached, poor self-

care, and successful ambulation with a wheelchair elsewhere previously and at FMC-Lexington since

2005.

The Defendants also point out that under Sixth Circuit law, prison staff who intentionally

deny a prisoner a means to ambulate and to perform all functions necessary in the prison

environment can rise to a Constitutional violation.  However, the Defendants contend, there is no

Eighth Amendment claim established here, as Plaintiff was able to participate in all activities at the

prison with his wheelchair.  They note that in 2006, Dr. Growse provided him with a new

wheelchair.

Therefore, because there is no genuine issue of material fact as to Dr. Growse's appropriately attending to Plaintiff's needs, this Defendant is entitled to summary judgment on the Constitutional claim. Further, Dr. Growse is entitled to qualified immunity, based upon the law stated in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) and later, in *Pearson v. Callahan*, _____ U.S. _____, 129 S.Ct. 808 (2009).

Finally, the United States addresses the FTCA claim – but not on the merits. Rather, the government sets out the FTCA's administrative steps which must be exhausted and the statutory time deadlines to which a claimant must adhere. The United States then contends that the instant lawsuit was not timely filed, and therefore, the matter must be dismissed for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1).

## DISCUSSION

The instant record shows that Plaintiff notified the Clerk's office of his release from prison on March 16, 2009. The Defendants certify that they sent the above-described Motion to Powell at his new address on May 4, 2009. Additionally, on May 11, 2009, this Court issued an Order noting the Plaintiff's *pro se* status and advising him of the need to respond. Plaintiff has not, however, filed a response to the Defendants' Motion, and the time for a response has expired without his filing a Motion for extension of time in which to do so.

Accordingly, the Defendants' assertions stand un-controverted, and as the Plaintiff was warned in the earlier Order, any arguments in opposition to the Motion may be considered waived. The Court recognizes, however, that it is ultimately the Movant who bears the burden of demonstrating that no material facts are in dispute. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986).  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate.  *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 410 (6ᵗʰ Cir. 1992); *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir.1991).

The Court begins with the Federal Tort Claims Act claim.  The FTCA, 28 U.S.C. §§ 2671-2680, is a limited waiver of sovereign immunity, and authorizes suits against the United States for money damages for personal injury resulting from the negligent or wrongful acts or omissions of United States employees acting within the scope of employment.  *See* 28 U.S.C. § 2674.  The statutory framework imposes its own statute of limitations, as follows:

> . . . .
> (b)      A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or *unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim* by the agency to which it was presented.

28 U.S.C. § 2401(b) (emphasis added).

The record in this case shows that the Plaintiff signed his FTCA administrative claim on January 9, 2008, and the BOP acknowledged its receipt on January 23.  The BOP's denial letter is dated June 25, 2008 and contains a warning that Powell had only 6 months from the date of that letter to file suit.  Accordingly, Powell had 6 months from June 25, 2008 to file a cause of action on the negligence theory.  Even though the instant lawsuit *SHOULD* have been filed on or before December 25, 2008, it was not *ACTUALLY* filed until January 5, 2009, eleven days late.  Therefore, the Court lacks jurisdiction to decide the FTCA claim and dismissal is required.

Next, it is a basic tenet in civil rights law that for a claim to be cognizable under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), a plaintiff must plead two essential elements.  He must show, first, that he has been deprived of rights secured by the Constitution or

laws of the United States and, second, that the defendants allegedly depriving him of those rights

acted under color of federal law. *Id.* at 397. There is no question that the individual Defendant, Dr.

Growse, was acting with authority from his employment with the Federal Bureau of Prisons when

he denied the Plaintiff's requests for new prosthetics. Whether he was depriving Powell of rights

provided in the Constitution or laws of the United States is the question to be resolved herein, and

the Court resolves it against the prisoner-plaintiff.

The Supreme Court has held that "[i]n order to state a cognizable claim [under the Eighth

Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently

harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976). Therefore, a prisoner must show both "deliberate indifference"

and "serious medical needs." *Id.* Deliberate indifference may be "manifested by prison doctors in

their response to a prisoner's needs or by prison [staff] in intentionally denying or delaying access

to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104.

Assuming that the need for a disabled prisoner to get around in a prison is a serious one (*see*

*Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993), cited by the Defendants), the Court looks at

the evidence going to whether Dr. Growse was deliberately indifferent to that need. "The subjective

component requires that an official who actually knew of the serious medical need possessed 'a

sufficiently culpable state of mind in denying the medical care.'" *Perez v. Oakland County,* 466 F.3d

416, 424 (6th Cir.) (citation omitted), *cert. denied*, 128 S.Ct. 166 (2007). The Court finds none.

Defendant Growse admits to his personal knowledge of Plaintiff's background with

prosthetics and wheelchairs, and the fact that the latter method of ambulating was more successful

for Powell than the former. The doctor admits, "I decided it was in Plaintiff's best interests to not

receive new artificial legs, because he was not well suited to utilize them, from a physical, medical,

6

and motivational standpoint." He then recites a myriad of reasons for this decision, including this prisoner's pre-incarceration records, Plaintiff's prior lack of success with prosthetics and success with the wheelchair, his failure to self care such that ulcers developed on his skin, Plaintiff's successful use of the wheelchair at the prison over the years at FMC-Lexington, and his sudden interest in having the prosthetics again, as his release date got closer.  Even then, however, he displayed no willingness to adhere to a weight loss plan and other regimens which the artificial limbs would require.

What does not matter is which appliance the Plaintiff preferred.  When a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated. *Estelle v. Gamble*, 429 U.S. at 107; *Tolbert v. Eyman*, 434 F.2d 625 (9th Cir. 1970); *Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983).  Even if mistakes in diagnosis and treatment are made,  "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir. 1989).

Liability attaches only when the Plaintiff "demonstrate[s] deliberateness tantamount to intent to punish." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994) (citation omitted); *see also Whitley v. Albers,* 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.").  This case is devoid of any evidence of deliberate indifference on the part of Dr. Growse and consequently, he is entitled to judgment on this claim.

This result is also consistent with policy considerations, especially the policy that a federal

court not second-guess the judgments of medical professionals who make diagnoses and decisions about treatment. *Estelle*, 429 U.S. at 107. A court must

> distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). Consistent therewith, this Court will not delve into the debate further.

By failing to provide a factual basis for his statutory rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA") and then waiving his arguments by not responding to the instant Motion of the Defendants, Plaintiff has essentially abandoned these claims. Nonetheless, the Court notes that the ADA does not apply to federal prisons or other federal entities (*see Pennsylvania Department of Corrections v. Yeskey*, 118 S.Ct. 1952 (1998)); and that the Plaintiff fails to establish how the BOP fits the definition of "programs and activities" necessary to RA provisions (*see* 29 U.S.C. §§ 794 and 794(b)).

### CONCLUSION

This Court must grant summary judgment if there is "no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). Also under Rule 56 the moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). After the moving party carries its burden, the non-moving party must go beyond the pleadings to present "significant probative" evidence of specific facts showing that there is a genuine issue of material fact for trial. *Id.* This means sufficient evidence from which a jury could reasonably find for him. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

This Court must then determine "whether the evidence presents sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

law." *Id.* at 251-52.  If the non-moving party completely fails to prove an essential element of his

or her case, then all other facts are rendered immaterial. *Celotex*, 477 U.S. at 322-23.  The Court

must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the

non-moving party. *Matsushita*, 475 U.S. at 587.

In this case, the Defendants have shown that there is an absence of evidence to support the

claims against them. *Id.* at 324-25.  The Plaintiff has failed to carry his burden to come forward with

"affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson* 477

U.S. at 247-48.  The instant Plaintiff's original allegations, even verified, cannot defeat Dr. Growse's

Motion for Summary Judgment. *Matsushita*, 475 U.S. at 587.

Accordingly, the Court finding no evidence of a timely *prima facie* federal claim herein and

the Defendant being entitled to judgment as a matter of law on each claim urged herein, **IT IS**

**ORDERED** as follows:

(1)      The Defendants' Motion for Summary Judgment [Record No. 15] is **GRANTED** with

regard to Plaintiff's *Bivens*, ADA, and Rehabilitation Act claims;

(2)      Defendants' Motion to Dismiss for lack of subject matter jurisdiction [Record No.

15] is **GRANTED** with regard to the FTCA claim; and

(3)      this action will be **DISMISSED** and Judgment will be entered contemporaneously

with this Memorandum Opinion and Order in favor of the Defendants.

This August 19, 2009.



Signed By:

*Karl S. Forester*   K S F

**United States Senior Judge**

9